TATEM, Trustee, Appellant, v. EGLANOL MINING CO., Defendant. FAY et al., Interveners and Respondents.

(No. 2,914.)

(Submitted December 21, 1910. Decided January 16, 1911.)

[113 Pac. 295.]

*Corporations—Directors—Promissory Notes—Loans by Officers —Validity of Notes—Evidence—Exclusion—Prejudice.*

Corporations—Transactions Between Directors and Company—When Valid.
  1. Contracts entered into by directors of a corporation with the company as an entity, by reason of which the former become creditors of the latter, are valid and enforceable so long as they are made in good faith and in the interest and for the benefit of the company.
Same.
  2. The holders of a majority of the capital stock of a mining corporation, which was heavily in debt and the property of which was subject to seizure and sale at the instance of its creditors, formed a pool of their stock, placing it in the hands of one of their number (a director and the president of the company) as trustee, and thereafter

sold a portion thereof and loaned the proceeds to the corporation for the purpose of paying its debts and enabling it to prosecute development work. Three members of the pool constituted a majority of the board of directors. Demand notes of the company were executed by two of the said directors, as president and secretary, respectively, and delivered to the trustee, the third director. The funds were used for the purposes indicated. *Held*, in an action to enforce payment on the notes, that they were not illegal or void.

Same—Action on Notes—Evidence—Exclusion of Notes—Reversible Error.

3. The district court committed reversible error in excluding from evidence the notes sued upon, under an objection that they were void because certain of the lenders were directors of the company; their production would have made a *prima facie* case for plaintiff trustee, whereas, upon their exclusion, he was forced to rely upon a cause of action on the common counts and placed under a much greater burden in making out his case.

*Appeal from District Court, Lewis & Clark County; J. M. Clements, Judge.*

Suit by Benjamin H. Tatem, as trustee, against the Eglanol Mining Company, Henry H. Fay and others, interveners. From a decree for defendant and from an order denying him a new trial, plaintiff appeals. Reversed and remanded.

*Messrs. Clayberg & Horsky,* and *Messrs. Walsh & Nolan,* submitted a brief and reply brief in behalf of Appellant. *Mr. John B. Clayberg* and *Mr. T. J. Walsh* argued the cause orally.

The notes sued on were not void but merely voidable, and subject only to rescission, upon a finding that they were given fraudulently and not for the benefit of the corporation, and that the directors gained some undue advantage over the corporation, other than that which would have been acquired by some third person in a like transaction, or that the directors made a secret profit thereby. (*Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1; *Wyman* v. *Bowman,* 127 Fed. 257, 62 C. C. A. 189; *Wills* v. *Porter,* 132 Cal. 516, 64 Pac. 896; *Schnittger.* v. *Old Home,* 144 Cal. 603, 78 Pac. 9; *Pacific Vinegar Works* v. *Smith,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550; *Smith* v. *Ferries Co.* (Cal.), 51 Pac. 710; *Twin Lick Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 329; *Gordon* v. *Plattsmouth,* 36 Neb. 548, 54 N. W. 830; *First National Bank* v. *Dovetail,*

143 Ind. 534, 42 N. E. 924; *Converse* v. *Sharp*, 161 N. Y. 571, 56 N. E. 69; *Mueller* v. *Monongahela Co.*, 183 Pa. 450, 38 Atl. 1009; *Savage* v. *Madelia Co.*, 98 Minn. 343, 108 N. W. 296; *Booth* v. *Land Improvement Co.*, 68 N. J. Eq. 536, 59 Atl. 767; *Anglo American Co.* v. *Davis Co.*, 112 Fed. 574; *In re Castle Braid Co.*, 145 Fed. 224; *United States* v. *Hodge Steel Co.*, 64 N. J. Eq. 807, 54 Atl. 1, 60 L. R. A. 742.) We admit that the decisions of the supreme court of California are somewhat "at sea" with each other, on the proposition just mentioned, but we believe that the difficulty has arisen in that court, from the inaccurate and careless use of the words "void" and "voidable." However, from the following California cases we cannot but conclude that transactions of the character of the one in question in this case are held to be merely voidable, at the instance of the corporation or any of its stockholders. (*Graves* v. *Mono Lake Co.*, 81 Cal. 303, 22 Pac. 665; *Phillips* v. *Sanger Co.*, 130 Cal. 431, 62 Pac. 749; *Wills* v. *Porter*, 132 Cal. 516, 64 Pac. 896; *Schnittger* v. *Old Home*, 144 Cal. 603, 78 Pac. 9; *Pacific Vinegar Works* v. *Smith*, 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550.)

Conceding the notes were voidable under the existence of certain facts, and that the corporation or its stockholders could rescind the same, such rescission could not be made effective except upon the return, or at least offer to return, to plaintiff of the moneys which he had advanced to the company. Not only must the pleadings set forth such facts as would warrant a rescission, but proof thereof must be clear and explicit. The complaint in intervention is an equitable plea for the rescission of the notes, and he who seeks equity must do equity. In the absence of such pleadings and proof, the interveners are not in a position to urge the defense of the voidable character of the notes and their rescission in this action. (See *San Diego* v. *Pacific Beach Co.*, 112 Cal. 53, 44 Pac. 333, 33 L. R. A. 788; sec. 5665, Revised Codes.)

The interveners ratified the loans and advance of the money by the plaintiff, to the defendant corporation. Unless pro-

ceedings are taken by the company or its stockholders to rescind a voidable contract within a reasonable time, they will be deemed to have ratified the same. (*Phillips* v. *Sanger Co., supra.*)

Ratification of a voidable contract can be made as satisfactory and conclusive by implication as by express act, the law being, that where a contract is made by an agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it will be presumed to have authorized or ratified the contract of this agent. (See *Railway Co.* v. *Hamilton Bridge Co.,* 131 U. S. 372, 33 L. Ed. 157.)

But, for the purposes of the argument, admitting that the notes sued on were absolutely void, and that the interveners or the company were in a position to raise the question of their avoidability, yet, we insist that plaintiff was entitled to recovery on the money counts, which were added to the complaint by plaintiff, after the exclusion of the notes, under the following principles: When money has been advanced or paid to another under a contract, even though absolutely illegal in its terms, the one advancing the money may always recover in an action for money had and received when the contract has been fully executed and when the court is not called upon to give aid to it, and when one party has received and used the proceeds of the contract. (See *Union Bank* v. *Planter's Bank,* 16 Wall. 483, 21 L. Ed. 473; *Andrews* v. *New Orleans Brewing Assn.,* 74 Miss. 362, 60 Am. St. Rep. 509, 20 South. 837; *Barnes* v. *Lynch,* 9 Okl. 156, 59 Pac. 995; *Overholt* v. *Burbridge,* 28 Utah, 408, 79 Pac. 561; *McDonald* v. *Lund,* 13 Wash. 412, 43 Pac. 348; *Willson* v. *Owen,* 30 Mich. 474; *Cook* v. *Sherman,* 20 Fed. 167, 4 McCrary, 20; *Long* v. *Lemoyne Borough,* 222 Pa. 311, 71 Atl. 211.)

In behalf of Respondents, there was a brief by *Messrs. Gunn & Hall,* and oral argument by *Mr. M. S. Gunn.*

Under the circumstances disclosed in the record, the transaction was in violation of the provisions of sections 5374 to

5379 of the Revised Codes, and the parties to the transaction were guilty of a fraud as declared in section 5380. This court in the case of *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1, treated sections 5374 to 5385 of the Revised Codes, relating to trustees, as applying to the directors or trustees of a corporation. The provisions of the Revised Codes, relating to the obligations of trustees, are identical with the provisions of sections 2228 to 2239 of the Civil Code of California. The supreme court of that state has held in a number of cases that by virtue of the statutory law of California, defining the duties and obligations of trustees, a contract with a corporation where the parties interested in the contract constitute the board of directors of the corporation or a majority thereof, is contrary to public policy and a nullity. (*Wilbur* v. *Lynde,* 49 Cal. 290, 19 Am. Rep. 645; *Smith* v. *Vinegar Co.,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550; *Graves* v. *Mono Lake Hydraulic Min. Co.,* 81 Cal. 303, 22 Pac. 665; *Smith* v. *Los Angeles Co.,* 78 Cal. 289, 12 Am. St. Rep. 53, 20 Pac. 677; *Smith* v. *Pacific Vinegar & Pickle Works,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550.) To the same effect, see *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Paxton* v. *Heron,* 41 Colo. 147, 124 Am. St. Rep. 123, 92 Pac. 15; *Steele* v. *Gold Fissure Min. Co.,* 42 Colo. 529, 126 Am. St. Rep. 177, 95 Pac. 349; *Gold Glen Min. Co.* v. *Stimson,* 44 Colo. 406, 98 Pac. 727. In view of the fact that the courts of California have declared that such a contract is a nullity by virtue of the provisions of the statutory law of that state, from which the law of Montana, declaring the duties and obligations of trustees, was taken, the decisions of the courts of that state should be accepted as controlling here.

It is contended for appellant that interveners cannot object to these promissory notes except upon condition that they return or offer to return to the plaintiff the money advanced by him to the corporation. We submit, that stockholders who defend on behalf of the corporation against a fraudulent claim asserted by the directors are not required as a condition to making such defense to pay or offer to pay money out of their

own pockets to the directors who have been guilty of a violation of their trust. (See *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810.)

It is next claimed that the interveners and the corporation have ratified the transaction involving the making and delivery of these notes. As a matter of fact there is no evidence that the interveners had any knowledge that these demand notes had been given until this action was commenced. They contended, and the jury evidently found, that the advances to the corporation were pursuant to an agreement that the same should not constitute a general indebtedness against the corporation, and should be payable only out of the first proceeds of the operation of the property or out of the proceeds of a sale of the property. Ratification by the corporation was impossible because the parties interested in these notes were the directors of the corporation, and there was no one who could speak or act for the corporation with reference to this transaction.

It is next contended that in any event the plaintiff is entitled to recover the money which he advanced to the company. A number of cases are cited in support of the proposition that where a contract with a corporation is held invalid, thereby preventing a recovery on the contract, the corporation may nevertheless be required to respond to the extent of the benefits which it has received. This is undoubtedly true as a general rule. Where, however, as contended by interveners, the money advanced to the corporation did not become a general indebtedness, but was to be repaid only from money received from the operation of the property or from a sale thereof, the rule announced in the authorities cited can have no application. Again, the authorities referred to are not applicable, for the further reason that the plaintiff and those interested with him in the recovery constituted a majority of the board of directors of the corporation, and the right to recover is determined by the provisions of the Revised Codes of Montana relating to trustees.

There was no proof to sustain a cause of action for money had and received. All of the evidence was in support of the causes of action for money loaned. Proof of money loaned will not support a cause of action for money had and received. (*Scarbrough* v. *Blackman*, 108 Ala. 656, 18 South. 735.) The count for money had and received does not state facts sufficient to constitute a cause of action under the system of Code pleading in this state. (*Truro* v. *Passmore*, 38 Mont. 544, 100 Pac. 966.) The reformed theory of pleading requires the facts to be stated as they exist or occurred, and not mere conclusions of law. (Pomeroy's Remedies and Remedial Rights, sec. 544; *Chesney* v. *Chesney*, 33 Utah, 503, 94 Pac. 989, 14 Ann. Cas. 835; *Lienan* v. *Lincoln*, 2 Duer (N. Y.), 670; *Cooper* v. *McKee*, 121 Ky. 287, 89 S. W. 203; *California State Tel. Co.* v. *Patterson*, 1 Nev. 150; *Nealis* v. *Marks*, 96 N. Y. Supp. 740; *Tate* v. *Am. Woolen Co.*, 114 App. Div. 106, 99 N. Y. Supp. 678; *Moore* v. *Hobbs*, 79 N. C. 535; *Bowen* v. *Emmerson*, 3 Or. 452.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Without reciting in detail the history of the Eglanol Mining Company, it is sufficient to say that in November, 1902, it was a corporation organized under the laws of this state, with a capital stock of $200,000, represented by 200,000 shares, of the par value of one dollar each. The property of the company consisted of placer mining claims, tools, machinery and other property used in connection with placer mining operations. In 1903 the owners of a majority of the stock formed a pool of their stock and placed it in the hands of B. H. Tatem, as trustee for the real owners. In 1904 the property had not been sufficiently developed to be operated successfully and profitably. The company was without funds and had outstanding debts amounting to about $4,700. A proposition was made to the minority stockholders that, if they would loan to the company $20,000 to discharge its indebtedness and prosecute development work, a first mortgage on all the property of the company would be

given as security. This was refused. Soon thereafter the owners of the pooled stock agreed to sell a certain portion of that stock and loan the proceeds to the company for the purposes just named. Whether Edgerton was made the agent of the pool or was given an option on the stock to be sold is immaterial. The fact is that through the instrumentality of Edgerton and one Belcher 39,000 shares of the pooled stock were sold at sixty cents per share net, to the pool. As the money was received from the sale, it was turned over to Tatem, as trustee, loaned to the company, and demand notes of the company, executed by Chessman as president and Edgerton as secretary, were delivered to Tatem. The first note bears date May, 1904, and the last of the twenty-one notes was executed and delivered in April, 1906. The money thus procured by the company was used by it in discharging its indebtedness and in prosecuting the work of development. From some time prior to the execution of the first note until after the execution of the last one, Chessman was president of the company, Tatem vice-president, and Edgerton secretary. These three were members of the board of directors and constituted a majority of the board. The amount loaned to the company and represented by the twenty-one notes was $23,400, the amount received from the sale of the 39,000 shares of pooled stock. Of the amount loaned, only $1,000 was repaid. On February 20, 1908, this action was brought by Tatem, trustee, against the company to recover the amount due on the notes. Apparently the company did not make any defense, but certain minority stockholders intervened and defended. Issues having been joined, the cause was brought on for trial before the court sitting with a jury. The plaintiff offered in evidence the twenty-one notes sued upon. The interveners thereupon objected to the offer of every one "on the ground that, under the pleadings in this case and the admitted facts, it conclusively appears that these notes, being demand notes, executed by the officers of the corporation defendant and issued to Mr. Tatem, the plaintiff, as trustee, are not binding upon the defendant corporation and were and are illegal, and

were without authority and illegally issued by the officers of the corporation to the plaintiff.'' This objection was sustained. Counsel for plaintiff then amended the complaint by adding a common count for money had and received, and twenty-one counts for money loaned by plaintiff to defendant, and, issues having been framed, the cause proceeded to verdict and judgment against the plaintiff. From that judgment and an order denying him a new trial, he has appealed.

1. The first error assigned relates to the exclusion from evidence of the notes sued upon, and the question for determination is: Were those notes void under the facts disclosed by the pleadings? In March, 1904, this company was in debt. Its property was subject to seizure and sale at the instance of its creditors. The company was without funds to pay its indebtedness or protect its property. Money was necessary to prosecute development work. In addition to these facts—which are not disputed—let us assume the additional facts: (a) That the board of directors had made every reasonable effort to borrow money from persons who were not directors, and had failed; (b) that the property was in actual jeopardy of being seized by creditors; (c) that Chessman, Edgerton, and Tatem, and others who were stockholders but not directors, were willing each to advance a portion of the money necessary, and that the aggregate of these amounts equaled the sum necessary to be raised; (d) that each of the persons just mentioned contributed the amount which he was willing to advance to a common fund to be loaned to the company upon its promissory notes; (e) that the loan was made, but, for the purpose of convenience, the notes were taken in the name of Tatem, as trustee for all who contributed to the fund; and (f) that by reason of getting this loan the company rescued its property from the burden of debt and developed it into an immensely valuable property, with the result that the shares of stock were greatly enhanced in value. Upon this statement of actual and assumed facts, would these interveners be heard to say that these notes are void by reason of the fact that Tatem, with Chessman and Edgerton, for whom he

acted in making the loan, constituted a majority of the board of directors? We think not. In our opinion it is wholly immaterial that the people who furnished the money to be loaned were members of the stock pool, or that they owned a majority of all the stock of the company. It is not claimed, and could not be, that a pool of this character is illegal, and there is not any contention made, and could not be, that such a pool cannot be lawfully formed by the owners of a majority of all the stock. So it is immaterial that the money was raised by the sale of pooled stock. It was the money of the people who contributed it, and it makes no difference whether it was raised by selling stock, by selling property not in any wise connected with the company, or by any other lawful means. It is likewise immaterial that the expenditure of money did not develop the property to a paying basis, for, if the notes representing the loan are void *ab initio,* they would have been equally invalid no matter what the result of the expenditure might have been.

Furthermore, it is immaterial to the determination of this question that one contributor to this fund was the wife of Chessman, or that another was the wife of Edgerton, or that the shares owned by Mrs. Chessman and Mrs. Edgerton, who were members of the pool, were necessary to control the stock, or that Tatem in his own right owned a majority of the stock in the pool. Certainly there is not anything in the law to prevent a married woman owning stock in a private corporation, and in this day of advanced thought and action it would not do to suggest that the separate property of a married woman is controlled by her husband merely because of the relationship of husband and wife.

In March, 1904, when it became necessary for this company to raise funds, Chessman, Edgerton, Tatem, Mrs. Chessman, Mrs. Edgerton, and others whose names are not disclosed by the record, each contributed a sum of money which in the aggregate amounted to $23,400, and loaned it to the company, of which Chessman, Edgerton, and Tatem constituted a majority of the board of directors, taking the notes of the company in the name of Tatem as trustee. It would be a rather startling prop-

osition to say that repayment of the loan cannot be enforced, or that the notes representing the loan are void. It is a fair presumption that the directors of a corporation know more about the value of the property of the concern than anyone else; and if it should occur that a company became temporarily embarrassed for want of money, and that strangers would not loan money to it, and that the directors who were willing to advance the money could not do so without being confronted by the defense that their contract of loan would be void, the concern and every one similarly situated would be forced into bankruptcy. By reason of the fiduciary relationship existing between the directors of a corporation and the corporation as an entity, and its stockholders, a court of equity will always scrutinize carefully any transaction between the directors and the company; but there is not any reason whatever for branding every such transaction as fraudulent, without reference to the good faith of the directors, the necessities of the corporation, or the purpose to be accomplished. (*Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1.) In the case just cited this court reviewed the authorities, and, after referring to the principle stated above, said: ''Counsel for defendant directors cite many cases to the proposition that under certain circumstances the directors of a corporation may become its creditors, and enforce their claims against the corporation as any other creditors. We have no inclination to dispute this doctrine, but agree with it, as being for the best interest of the corporation. This doctrine, however, is based upon a contract relation between the directors and the company whereby the debt is created, and is allowed because directors of a corporation are more familiar with the business and affairs of the corporation and its necessities than outsiders, and that it would be extremely unjust not to permit them to assist the corporation in financial troubles. When directors become creditors in this manner, they may enforce their claims by the same methods as any other creditor.''

In *Savage* v. *Madelia Farmers' Warehouse Co.,* 98 Minn. 343, 108 N. W. 296, the supreme court of Minnesota said: ''Direct-

ors and other officers may deal with the corporation they represent, and of which they are members, precisely as though they held no official relation with it, and contracts entered into by them with the corporation are valid and enforceable so long as not tainted with fraud. (7 Am. & Eng. Ency. of Law, 759.) In such transactions the directors are bound by those rules of fairness which courts of equity impose upon trustees; but they are not forbidden to loan the corporation money, or from guaranteeing the payment of its obligations."

In *Wyman* v. *Bowman*, 127 Fed. 257, 62 C. C. A. 189, there is a very learned discussion of the question now before us, by the circuit court of appeals of the eighth circuit. In the course of the opinion it is said: "Concede for the moment that the directors were not competent to make the contract for themselves, and that they received a preference over the other creditors. Nevertheless their contract and transaction was not void, it was voidable only, and voidable at the option of the creditors or the stockholders of the company. Neither the creditors, nor the corporation, nor the stockholders, could take and keep the benefit of the contract and transaction, and repudiate its burdens. The transaction was valid until avoided, not void until confirmed. * * * In the first place, it is not true as a general rule that the directors of a corporation are incompetent to make contracts with themselves as individuals, or that agreements so made may generally be avoided at the suit of the creditors or stockholders of the corporation. The only reason why a contract of this character may be set aside in any case is because directors occupy a fiduciary relation to the corporation, its creditors, and stockholders. The relation is analogous to that of agent to principal and trustee to *cestui que trust*, but it is not of so intimate and confidential a character as either of these. Still, it is such a relation of trust and confidence that courts scrutinize with jealous care all transactions between directors as officers and as individuals, and require them to be characterized by good faith and the conscientious discharge of official duty. The vice against which they seek to guard is that the adverse interest of

the individual may overcome the duty of the official and induce agreements and transactions detrimental to the corporation and unduly beneficial to the individuals. Yet in many—probably in most cases—the interest of the directors and officials of the corporation is as great, and it is often greater, in the welfare and success of the company, than in their individual prosperity. In many cases the prosperity of the individuals is conditioned by the success of the corporation they are managing. There is no sound reason why individuals who are directors of a corporation may not come to its assistance in days of financial distress; may not make their contracts to loan money to it, to receive security from it for repayment, to accept payment of obligations to them, to buy property from or sell property to it, or to do any other act beneficial to the corporation or mutually advantageous to both the corporation and the individuals. The question here under consideration has often been discussed and determined by courts of this country and of England, and, without entering upon an exhaustive review of the opinions, it may be safely said that these principles have become firmly established both by reason and authority. Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officers work in unison for the welfare of the corporation, are valid and enforceable both in law and in equity."

In *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328, the supreme court of the United States said: "That a director of a joint stock corporation occupies one of those fiduciary relations where his dealings with the subject matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and others. (*Koehler* v. *Black River Falls*

*Iron Co.,* 2 Black, 715, 17 L. Ed. 339; *Drury* v. *Cross,* 7 Wall. 299, 19 L. Ed. 40; *Luxemburg R. R. Co.* v. *Maquay,* 25 Beav. 586; *Cumberland Co.* v. *Sherman,* 30 Barb. (N. Y.), 553; *Hoffman Steam Coal Co.* v. *Cumberland Coal & Iron Co.,* 16 Md. 456, 77 Am. Dec. 311.) The general doctrine, however, in regard to contracts of this class, is, not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it.  *  *  * The directors are the officers or agents of the corporation, and represent the interests of that abstract legal entity, and of those who own the shares of its stock. One of the objects of creating a corporation by law is to enable it to make contracts; and these contracts may be made with its stockholders as well as with others.  *  *  * So, when the lender is a director, charged, with others, with the control and management of the affairs of the corporation, representing in this regard the aggregated interest of all the stockholders, his obligation, if he becomes a party to a contract with the company, to candor and fair dealing, is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent. If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness. All this falls far short, however, of holding that no such contract can be made which will be valid; and we entertain no doubt that the defendant in this case could make a loan of money to the company." To the same effect is *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.,* 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713.

In 3 Clark and Marshall on Private Corporations, section 760, it is said: "All the authorities agree that the majority of the directors must be disinterested in respect to the matters voted upon. If one or more of them are personally interested in a contract or other transaction voted upon by the board, and less

than a majority are disinterested, the corporation may set the transaction aside. Some of the courts go further than this, and hold that the transaction is not merely voidable at the option of the corporation, but that it is absolutely void. But by the weight of authority it is merely voidable, and may be ratified or acquiesced in by the stockholders, and thereby rendered binding.''

In 3 Thompson's Commentaries on the Law of Corporations, section 468, the learned author says: ''The strict rule that directors cannot enter into contracts with the corporation does not seem to be practicable. It would operate to disable those who have already embarked their funds in a corporate enterprise and given to it their personal attention, from assisting it in time of difficulty, except at the risk of doing so without security. A corporation might be in a sorry plight indeed if one who had already embarked his funds in it, and who, from the fact of his being one of its managers, is best acquainted with its needs and difficulties, should not be able to make a present advance of money to it to help it out of those difficulties. That it is necessary for the law to throw around such transactions the strongest safeguards in order to prevent fraud need not be argued. * * *. We therefore find the prevailing doctrine to be that the director of a corporation may advance money to it, may become its creditor, may take from it a mortgage or other security, and may enforce the same like any other creditor—but always subject to severe scrutiny, and under the obligation of acting in the utmost good faith.''

In treating of the relationship of directors of a corporation to the company itself and to its stockholders, the supreme court of California has applied the statutory rules governing a trustee and *cestui que trust*. (Cal. Civ. Code, secs. 2228, 2230–2234; Mont. Rev. Codes, secs. 5374, 5379, 5380.) We doubt the propriety of this holding so far as applied to the directors of a going concern, but the result of the California court's holding is not different from that of the majority of the courts, as indicated in the cases cited above. In *Phillips* v. *Sanger Lumber*

*Co.,* 130 Cal. 431, 62 Pac. 749, there was considered the validity
of a note executed by the Sanger Lumber Company, through
Moore, its president, to the Moore & Smith Lumber Company,
of which Moore was president and a large stockholder, and, ap-
plying the doctrine of the sections of the California statutes
cited above, the court said: "A trustee or fiduciary is, indeed,
forbidden by section 2230 of the Civil Code to take part in any
transaction in which he, or one for whom he acts as agent, has
an interest adverse to that of his beneficiary; and, by section
2234, for him to do so is a fraud against the beneficiary of the
trust.  But assuming, though not deciding, that the case comes
within the scope of these provisions, they do not affect the power
to execute the contract, where otherwise it exists, but only the
contract itself after it is executed; that is to say, they do not
make the contract void, but voidable only at the option of the
beneficiary, who may either affirm or repudiate it."

In *Schnittger* v. *Old Home Con. Min. Co.,* 144 Cal. 603, 78
Pac. 9, the same court said: "A director of a corporation, like
any other trustee, is bound to act in the utmost good faith
toward his beneficiary (Civ. Code, sec. 2228), and is forbidden
to take part in any transaction concerning the trust in which
he has an interest adverse to that of his beneficiary (Civ. Code,
sec. 2230); but he is not absolutely precluded from dealing
directly with the corporation of which he is a director.  Any
transaction between them is subject to rigid scrutiny, and is
voidable at the instance of the beneficiary for any violation of
his duty as trustee, but is not *ipso facto* void."

While there is some apparent conflict in the California de-
cisions, it arises, doubtless, from a somewhat indiscriminate
use of the terms "void," "voidable," and "illegal."  In *Pacific
Vinegar & Pickle Works* v. *Smith,* 145 Cal. 352, 104 Am. St.
Rep. 42, 78 Pac. 550, there is a review of the former decisions,
and the court rather loosely expresses itself as follows: "These
are all the cases from this court cited by counsel, and none of
them run counter to, but clearly recognize the distinction be-
tween, cases where the director deals with the corporation, or

his act, while illegal, is subsequently ratified by it, and cases where he deals with himself without the knowledge and approval of the corporation, and where there is no ratification.''

The decision of this court in *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810, is not in conflict with the views herein expressed. In that case this court was considering the question of actual fraud which Bannister and Child, two of the directors of the Bannister Mining Company, perpetrated upon the stock-holders and the company.

Reason and the decided weight of authority lead us to the conclusion that the notes sued on in this present action are not illegal or void.

2. Did the exclusion of the notes prejudicially affect the interest of plaintiff? In 10 Cyc. 812, it is said: ''So far from a contract between the director and the corporation being void *ab initio,* the law is that in the absence of fraud such a contract is enforceable in an action at law.'' In 3 Thompson on Corporations, section 4067, the same rule is stated as follows: ''A conception which illustrates the incongruity of a system of judicial administration, in which a contract may be either good or bad according to the form of action or kind of remedy, is involved in the proposition that such a contract is *good at law;* the director and the corporation being different persons in theory and fiction of law, and not a partner and his firm. Under this theory, if the director enters into a contract with the corporation, whereby he is to do something for the corporation for a reward, and *executes the contract,* he is entitled to sue the corporation *on the contract* and recover *the agreed price.*'' In other words, in this action at law to enforce payment of these notes, the production of the notes by the plaintiff made out his *prima facie* case, and the burden of proof was upon the interveners to show such a state of facts, if any existed, as would defeat the plaintiff's right to recover. When, however, the notes were excluded, and plaintiff was forced to reply upon the common counts, a very much greater burden was imposed upon him.

3. But it is said that the record fails to show that the corporation, as such, authorized the loan or the execution of the notes. Assuming, without deciding, that this is correct, yet it is an undisputed fact that the money was received by the corporation and used for its purposes and benefit. Nearly four years elapsed between the date of the first note and the bringing of this action, and nearly two years between the date of the last note and the filing of the complaint. The interveners knew that the money was being borrowed by the corporation and the purposes for which it was to be used. There was thus presented the question of ratification, and the further question whether restitution of the amount borrowed is not a condition precedent to the right of the interveners to have the transaction set aside, if they elected to avoid it within a reasonable time. But, in any event, the case was not tried upon a correct theory. It was error to exclude the notes from evidence, and for this error the judgment and order denying a new trial should be reversed and the cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.