O'ROURKE, Executrix, Respondent, v. GRAND OPERA
HOUSE CO., Appellant.

(No. 3,259.)

(Submitted May 21, 1913. Decided June 7, 1913.)

[133 Pac. 965.]

*Corporations — Directors — Advancements to Corporation—Re-
payment—Special Meetings—Notice—Insolvency—Rights of
Creditors—Preferences—Who may not Question—Evidence—
Stenographers — Harmless Error — Appeal from New Trial
Order—Questions not Reviewable.*

Appeal and Error—Questions not Reviewable on Appeal from New Trial
Order.
1. The sufficiency of the complaint not having been challenged by
objection to the introduction of evidence, or otherwise, and a ruling of
the court obtained thereon during trial, the question is not reviewable
on appeal from an order denying a new trial, but may be examined
only on appeal from the judgment.
Corporations—Board of Directors—Special Meetings—Verbal Notice—
Sufficiency.
2. Verbal notice of a special meeting of the board of trustees of a
corporation organized under the Compiled Statutes of 1887 was suffi-
cient to make its proceedings proof against the objection that they
were void because not based upon a written notice.
Same—Special Meetings—Written Notice—When Unnecessary.
3. Notice in writing to the members of the board of directors of a
corporation of the holding of a special meeting, as required by section
449, Civil Code of 1895 (Rev. Codes, sec. 3848), was not indispensable
to the legality of the proceedings, where all the directors attended
and participated without objection in the dispatch of the business in
hand.
Same—Directors—Sale of Stock—Effect.
4. Upon the assumption that the sale of his stock in a corporation
*ipso facto* vacated the office of the seller as a director, such result did
not follow where at the time of a special meeting of the board
negotiations for the sale, though pending, were not completed.
Same—Directors—Advancements to Corporation—Repayment.
5. A director may advance money to his corporation for the payment
of legal expenses, charges for taxes, insurance, *etc.,* and enforce his
claim for repayment, provided he act in good faith and do not obtain
an advantage to the detriment of the other stockholders.
Same—Directors—Advancements—Allowance of Claim—Preference.
6. That a director of a corporation by the action of the board of
directors in allowing a claim of the former for repayment of advance-
ments made by him, gained a preference over other of its creditors was
not a matter of concern to the corporation, but one to be adjusted
between the creditors themselves.

Same—Insolvency—Rights of Creditors.

  7. The fact that a corporation is insolvent does not affect the right of one of its creditors, whether one of its officers or a stranger, to reduce his claim to judgment.

Evidence—Stenographers—Reading from Transcript of Notes—Harmless Error.

  8. An official stenographer who had reported the testimony of a witness on a former trial of the cause who died in the interim between the two trials was properly permitted to read such testimony from a transcript made of his notes which had been lost, after swearing to the correctness of the original notes and the transcript; and though technical error was committed in giving him permission to do so without a showing that he had no independent recollection of the testimony (Rev. Codes, sec. 8020), such error was nonprejudicial, the case having been tried without a jury and the other evidence adduced having been amply sufficient to sustain the court's finding.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Mary E. O'Rourke, as executrix of the estate of John O'Rourke, deceased, against the Grand Opera House Company. Judgment for plaintiff. Defendant appeals from an order denying its motion for a new trial. Affirmed.

*Messrs. Jas. E. Murray, Chas. O'Donnell,* and *Alex. Mackel,* for Appellant, submitted a brief; *Mr. O'Donnell* and *Mr. Murray* argued the cause orally.

Was the board of directors legally assembled? Mr. Thompson lays down the rule that any act of the majority of the directors of a board which has not been regularly assembled, as when notice of the meeting has not been given, will be without force or validity. (1 Thompson on Corporations, secs. 706–709; *Despatch Line* v. *Bellany Co.,* 12 N. H. 205, 37 Am. Dec. 203; *Elliot* v. *Abbot,* 12 N. H. 549, 37 Am. Dec. 227; *Citizens' Securities Co.* v. *Hammel,* 14 Cal. App. 564, 112 Pac. 731.) Without being summoned together in a manner provided in the by-laws, or by the statute in the absence of by-laws, members of the board have no official authority or discretionary power, nor have they any original authority at all, and the accidental assembly of the majority of persons who are directors of a company without compliance with the by-laws or statute, does not constitute a regular board and their acts are not binding on the company.

(3 Thompson on Corporations, sec. 3932; *Hillyer* v. *Overman Silver Min. Co.,* 6 Nev. 51; *Gashwiler* v. *Willis,* 33 Cal. 11, 91 Am. Dec. 607, 3 Morr. Min. Rep. 511.) We submit that the meeting of the directors in this case having been called by Mr. Bender, and not by "special notice in writing given to each director by the secretary, on the order of the president," as provided by section 3848, Revised Codes, the meeting was not duly assembled, and the resolution attempted to be adopted was invalid and of no force or effect whatever. The question when directors shall be considered duly assembled is not settled by the statute. Under the authorities it is uniformly held that a mere gathering of the directors and transaction of business by them while so assembled will not render their acts legal and binding. (*Harding* v. *Vandewater,* 40 Cal. 77.) Even though all the directors meet together, their acts while so assembled are not valid corporate acts. It must first appear that they were "duly assembled." (*Alta Silver Co.* v. *Alta Placer Min. Co.,* 78 Cal. 629, 21 Pac. 373; *Thompson* v. *Williams,* 76 Cal. 153, 9 Am. St. Rep. 187, 18 Pac. 153; 3 Thompson on Corporations, sec. 3932.) A single director cannot bind a corporation by his declarations or put a construction on its contracts, nor can any number of the directors do so except when duly assembled and acting as a board. (10 Cyc. 775; *Cascade Ins. Co.* v. *Journal Co.,* 1 Wash. 452, 25 Pac. 330; *Hartford Bridge Co.* v. *Granger,* 4 Conn. 142; *Butler* v. *Cornwall Iron Co.,* 22 Conn. 335; *Hamlin* v. *Union Brass Co.,* 68 N. H. 292, 44 Atl. 385; *Woodbury Granite Co.* v. *Mulliken,* 66 Vt. 465, 30 Atl. 28; see, also, *Smith* v. *Cornelius,* 41 W. Va. 59, 30 L. R. A. 747, 23 S. E. 599; *Wagner* v. *St. Peter's Hospital,* 32 Mont. 206, 79 Pac. 1054.)

O'Rourke was disqualified by the sale of his stock and could not participate in any meeting of the directors. Where a statute requires a director to be a stockholder it follows that an out-and-out transfer of his stock holdings disqualifies him from acting as director. (3 Thompson on Corporations, sec. 3887; 10 Cyc. 738; *Chemical Nat. Bank* v. *Colwell,* 132 N. Y. 250, 30 N. E. 644; *In re Newcomb,* 18 N. Y. Supp. 16; *Seal of Gold Mining Co.* v. *Slater,* 161 Cal. 621, 120 Pac. 15.) This does not inter-

fere with the rule that a person who continues to act as a director, after parting with his stock holdings, may be estopped from asserting that he was not legally qualified to so act. As to all third parties, a person acting as a director, though he is disqualified, will nevertheless be held to be a director *de facto*. (*Seal of Gold Mining Co.* v. *Slater, supra;* 3 Thompson on Corporations, sec. 3893.)

It appears from the evidence that the defendant company was insolvent and under such circumstances a director will not be permitted to secure any preference or advantage by reason of his position with the company. (10 Cyc. 803; *Richards* v. *New Hampshire Ins. Co.,* 43 N. H. 263; *Beach* v. *Miller,* 130 Ill. 162, 17 Am. St. Rep. 291, 22 N. E. 464; *Olney* v. *Connanicut Co.,* 16 R. I. 597, 27 Am. St. Rep. 767, 5 L. R. A. 361, 18 Atl. 181; *Consolidated Tank Line Co.* v. *Kansas,* 45 Fed. 7.) The directors occupied a fiduciary relation to the corporation, its stockholders and its creditors, and they had no right to use such relation and their official position for their own benefit or the benefit or advantage of any member or person to the injury of the stockholders. (*Haywood* v. *Lincoln Lumber Co.,* 64 Wis. 639, 26 N. W. 184; 10 Cyc. 787; *Washburn* v. *Green,* 133 U. S. 30, 33 L. Ed. 516, 10 Sup. Ct. Rep. 280.)

*Mr. L. O. Evans,* and *Mr. John E. Corette,* for Respondent, submitted a brief; *Mr. Evans* argued the cause orally.

Officers of a corporation may in good faith loan their money to the corporation for the legal purposes of the corporation, and hold and enforce their claims for the repayment thereof, as valid claims against the corporation. It is immaterial whether the corporation be solvent or insolvent. (3 Thompson on Corporations, secs. 4068, 4069; *Schnittger* v. *Old Home etc. Co.,* 144 Cal. 603, 78 Pac. 9; *Santa Cruz Ry. Co.* v. *Spreckles,* 65 Cal. 193, 3 Pac. 661, 802; *Miller* v. *Halsted,* Fed. Cas. No. 9572; *Mullanphy Bank* v. *Schott,* 34 Ill. App. 500; *Saltmarsh* v. *Spaulding,* 147 Mass. 224, 17 N. E. 316; *Foster* v. *Belcher S. R. Co.,* 118 Mo. 238, 24 S. W. 63; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328, 3 Morr. Min. Rep. 688; *Gould* v.

*Little Rock M. R. & T. Ry. Co.,* 52 Fed. 680; *Stokes* v. *Stokes,* 91 Hun, 605, 36 N. Y. Supp. 350; *Illinois Steel Co.* v. *O'Donnell,* 156 Ill. 624, 47 Am. St. Rep. 245, 31 L. R. A. 265, 41 N. E. 185.)

The question of illegal preference cannot be raised in an action at law, or by the corporation itself, but can only be raised by a creditor in a proper action in equity. The reason for the rule is plain. It is immaterial to the corporation how its property is distributed among its creditors, and the only person who can raise the objection is one who has been injured by the preference, which would be a creditor, and the creditor, of course, would have to proceed in equity. (*Henry Dibblee Co.* v. *Watson,* 60 Ill. App. 432; *Beach* v. *Miller,* 130 Ill. 162, 17 Am. St. Rep. 291, 22 N. E. 464; *Roseboom* v. *Whittaker,* 132 Ill. 81, 23 N. E. 339; *Atwater* v. *American Ex. Bank,* 152 Ill. 605, 38 N. E. 1017; *Illinois Steel Co.* v. *O'Donnell,* 156 Ill. 624, 47 Am. St. Rep. 245, 31 L. R. A. 265, 41 N. E. 185.)

We know of no better or more approved method of proving former testimony than that of producing on the stand the official stenographer who reported the same, giving opportunity to examine him as to his competency and methods, and as to any other detail tending to test the correctness of his report, and having him read the former testimony from his original notes then taken. In the present case the loss of the original shorthand notes was shown, and instead a typewritten transcript made shortly after the former trial by the stenographer, and which he swore to be accurate and correct, was used, and we know of no court which has held such evidence inadmissible. (*Cutler* v. *Territory,* 8 Okl. 101, 56 Pac. 861; *State* v. *Smith,* 99 Iowa, 26, 61 Am. St. Rep. 219, 68 N. W. 428; *Miles* v. *Walker,* 66 Neb. 728, 92 N. W. 1014; *State* v. *Fetterly,* 33 Wash. 599, 74 Pac. 810; 40 Cyc. 2466.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by John O'Rourke to recover of the defendant corporation on two counts, the first upon a promissory note executed by the defendant to O'Rourke, and the second

upon an account stated for money expended by him for the use and benefit of the defendant. Subsequently, upon a suggestion of the death of O'Rourke by counsel for defendant, Mary E. O'Rourke, executrix of his will, was substituted as plaintiff. In its original answer defendant admitted its liability for the amount of the promissory note. Judgment was thereupon entered for the plaintiff upon the first count, and the action proceeded upon issues presented by an amended answer to the second count. The complaint alleges that between the 7th day of February, 1895, and the 15th day of October, 1896, the plaintiff paid for the use of the defendant various sums of money aggregating $585, and that at a meeting of the board of trustees (directors) of the defendant held on the latter date, the defendant approved the payments and settled and allowed them as a valid debt against it in favor of O'Rourke. The answer denies generally all the allegations of the complaint, except the corporate capacity of the defendant. It then alleges affirmatively that from January 4, 1895, until and including January 4, 1897, O'Rourke was the president of the defendant, and that on February 1, 1895, and ever since that time the defendant has been, and now is, insolvent and unable to pay its debts. The reply denies that it is insolvent. The court, sitting without a jury, found the issues for the plaintiff and ordered judgment entered accordingly. The cause is before this court upon an appeal from the order denying defendant's motion for a new trial, its appeal from the judgment having heretofore been dismissed.

1. Counsel for defendant have devoted a considerable portion of their brief to a discussion of the question whether the complaint states facts sufficient to constitute a cause of action. This question cannot be agitated on this appeal. The sufficiency [1] of the pleading was not challenged during the trial by objection to the introduction of evidence, or otherwise, on the ground of a lack of material allegation therein; therefore, there was no ruling during the trial with reference to its sufficiency which can be regarded as an ''error of law occurring during the trial,''within the meaning of section 6794, Revised Codes, desig-

nating the grounds upon which a motion for a new trial may be made. When such is the condition, the question of the sufficiency of the complaint can be examined only on appeal from the judgment. (*Charles Schatzlein Paint Co.* v. *Passmore,* 26 Mont. 500, 68 Pac. 1113; *Campbell* v. *Great Falls,* 27 Mont. 37, 69 Pac. 114.) We may remark, however, that while the pleading is not a model, it alleges a cause of action upon an account stated.

2. It is argued that the evidence is insufficient to show defendant's liability, for the reason (1) that it appears that when the resolution was adopted by the board of directors approving O'Rourke's account, the board was not regularly assembled; (2) that it appears that O'Rourke was in collusion with the other directors after he had sold and disposed of all his stock in the corporation, and that his participation in the meeting of the board, under these circumstances, rendered its action in adopting the resolution void. The board of directors consisted of O'Rourke, W. R. Kenyon and M. J. Connell. O'Rourke was president, Kenyon vice-president, and Connell secretary. Prior to October 15, 1896, the company was engaged in litigation in an endeavor to foreclose a mortgage held by it upon real property in Butte, and to defeat claims for liens against the same property by others, including James A. Murray. It was without ready money with which to pay the expenses of litigation and to meet the charges for taxes, insurance, *etc.* From time to time O'Rourke advanced money to pay these charges. On February 7, 1895, the amount of his advancements aggregated $762. At a meeting of the board of directors on that date, which was attended only by O'Rourke and Kenyon, the president and secretary were by resolution authorized to execute to O'Rourke a promissory note of the corporation for this amount, to bear interest from date. At a meeting held on October 16 of the same year, all the directors being present, a resolution was adopted authorizing the vice-president and secretary to execute the note, to bear date February 7, 1895, the reason for this action, as appears from the resolution, being that since O'Rourke's presence was necessary to make a quorum of the board at the meeting held

on February 7, 1895, and no business could be transacted without his vote, the resolution adopted at that time was not a valid act of the corporation. The resolution adopted at the later meeting contained this recital: ''There being other payments in the sum of $585 made by John O'Rourke for the use and benefit of the Grand Opera House Co., upon motion of W. R. Kenyon the said payments were approved by the board of trustees.'' It appears from the evidence that the advancements by O'Rourke were made by authority of the board of directors and that they were necessary to protect the interests of the company and to preserve its property. That this was the case is not seriously controverted by counsel for defendant, who introduced no evidence tending to impugn the honesty of O'Rourke or any of his associates. It may be noted just here that the note authorized at the later meeting of the board was the basis of the first cause of action and that the defendant permitted judgment to go for the amount of it, without offering any defense.

Counsel seriously contend, however, that since the meeting was not called by written notice as prescribed by section 449 of the Civil Code of 1895 (Rev. Codes, sec. 3848), the board of directors was not duly assembled, and hence that none of its proceedings were binding upon the company. This contention is without merit. The corporation was organized under the provisions [2] of the statute in force prior to the adoption of the Codes of 1895. While the directors (or trustees, as these officers were then designated) had the power to enact by-laws for the government of the corporation and the management of its business affairs (Comp. Stats. 1887, Fifth Div., sec. 454), they were not required to do so. It was left to them, at their option, to establish their own custom and method of doing this. They had adopted the custom of holding special meetings upon informal notice. The meeting was called at the instance of the president, verbal notice being given by the attorney of the corporation to all of the directors. It was held at the usual place of meeting. This was the custom which had always been observed, except that formal notice by publication was given of annual meetings. If the provisions of the Code of 1895 were not ap-

plicable, as counsel for plaintiff contend, because the corporation had not elected to continue its existence under them, the notice was sufficient. If the provisions of section 449 of that Code were applicable, nevertheless the necessity of formal notice in conformity therewith was obviated, because all of the directors attended and no one objected to the holding of the meeting because of the want of notice or for any other reason. While ordinarily the requirements of the statute cannot be [3] dispensed with, formal notice is not necessary when all the directors attend and participate without objection in the dispatch of the business in hand. "The only object of the notice is that the directors have an opportunity of being present at the meeting and taking part in its proceedings." (*Minneapolis Times Co.* v. *Nimocks,* 53 Minn. 381, 55 N. W. 546; see, also, *Stobo* v. *Davis Provision Co.,* 54 Ill. App. 440; *State ex rel. Grimm* v. *Manhattan Rubber Mfg. Co.,* 149 Mo. 181, 50 S. W. 321; *Troy Mining Co.* v. *White,* 10 S. D. 475, 42 L. R. A. 549. 74 N. W. 236; 2 Thompson on Corporations, sec. 1142; 10 Cyc. 786.) Counsel for plaintiff cite many cases in support of their contention, but they fail to note that in the cases cited a part of the directors did not attend the meeting and take part in the proceedings, but were either absent or, being present, protested against the proposed action. *Smith* v. *Dorn,* 96 Cal. 73, 30 Pac. 1024, and *Thompson* v. *Williams,* 76 Cal. 153, 9 Am. St. Rep. 187, 18 Pac. 153, are illustrative examples.

The record does not sustain the contention of counsel that at the time of the meeting O'Rourke had sold his stock and thus disqualified himself to act as a director of the corporation. In fact, he did sell his stock to James A. Murray, but the evidence does not go further than to show that at the time the meeting was held, negotiations for the sale were pending but not yet completed; for the stock was at the time in the hands of Mr. A. J. Davis, who had authority to complete the transaction. It does not appear how long it was afterward before the sale was actually made and the stock transferred. If it be conceded, [4] therefore, that in order to act as director, O'Rourke must have been a stockholder (Rev. Codes, sec. 3833; Civil Code 1895,

sec. 434), and that the sale of his stock *ipso facto* vacated his office as director, this result was not accomplished until the sale was completed. Under the allegations of the answer, however, the defendant is not in position to insist that O'Rourke's connection with the company was not legitimate. Upon the record, therefore, O'Rourke was a director at the time the meeting was held, and was qualified to act in any matter in which his interest was not adverse to that of the corporation. We are not required to determine definitely what his relations with the company were. He was preferring a claim against it. He was *pro hac vice* disqualified to vote. He took no part in the proceedings looking to the approval of the account. It was approved by a vote of both of the other directors who constituted a quorum of the board, and their action was binding upon the corporation.

Counsel question the validity of the action of the board on the ground that, if it be conceded that O'Rourke was a director of the corporation, he could not deal for himself and the corporation at the same time, and since it appears from the evidence that all the members of the board were antagonistic to Mr. Murray, the prospective purchaser of the O'Rourke stock, the result of the resolution was in any event to give O'Rourke an unfair advantage by reason of his position as director. The [5] rule is well settled that the officers of a corporation may lend money to the corporation for legal purposes and hold and enforce their claims for repayment, provided, however, they act in good faith and do not obtain an advantage to the detriment of the other stockholders. It is frequently the case, as here, that a corporation is temporarily in distressed circumstances, and if the officers were not permitted under such conditions to assist it by advancing the funds necessary to relieve its distress, the result would be disaster to its business and loss to its stockholders. (*Coombs* v. *Barker*, 31 Mont. 526, 79 Pac. 1; *Tatem* v. *Eglanol Min. Co.*, 42 Mont. 475, 113 Pac. 295.) An officer lending money to the corporation may even demand and receive security for his advancements. So long as he has acquired by the transaction no advantage which might not be

accorded to any other creditor under the same circumstances, his claim will be upheld and enforced. The record does not justify the assertion that there was enmity betwen Mr. Murray and the directors; but were this the fact, and were it also the fact that Mr. Murray had become the purchaser of the O'Rourke stock at the time the meeting was held, nevertheless the propriety of the action of the majority of the board of directors is not to be condemned for this reason alone. The evidence tends to show that the advancements had actually been made to the amount claimed. The admission by the board of the justness of the claim as a charge against the corporation could not wrong the stockholders.

It is argued that the directors put O'Rourke in a position [6] to gain a preference over the other creditors of the corporation and that his preference will be made good unless the judgment be set aside. This is a matter about which the corporation is not concerned. Whether O'Rourke's estate is entitled to a preference is a question to be determined upon an issue made between the executrix and the other creditors, if there are any, in a proceeding instituted to adjust their respective rights. The fact that the corporation is insolvent [7] does not affect in anywise the right of one of its creditors, whether an officer of the corporation or a stranger, to reduce his claim to judgment.

3. Error is predicated upon the action of the court in admitting certain evidence over the objection of the defendant. On [8] a former trial of this case, O'Rourke was alive and testified fully as to his relations to the corporation and the circumtsances out of which his claim arose. His testimony given at that time was reported and a transcript of it made by the official stenographer at the request of the attorneys. Subsequently the person who was then stenographer went out of office. At the trial he was produced as a witness and sworn. After stating that his original notes embodied an accurate report of O'Rourke's testimony, that the transcript was a correct translation thereof, and that the original notes filed with the clerk had been lost or destroyed, he was permitted to rehearse the testimony by

reading from the transcript. It was objected that the evidence was incompetent, and it is argued that the court erred to the prejudice of the defendant in admitting it. It having been made to appear that O'Rourke was dead, his testimony given on the former trial was admissible (Rev. Codes, sec. 7887; *Reynolds* v. *Fitzpatrick,* 28 Mont. 170, 72 Pac. 510). Since the stenographer who reported it and made a transcript of it had testified that the transcript was an accurate translation of the original report, it was competent for him to rehearse the evidence, either by using the transcript as a memorandum to refresh his memory, or, in case he had no independent recollection of the testimony, to testify from the transcript. (Rev. Codes, sec. 8020; *Marron* v. *Great Northern Ry. Co.,* 46 Mont. 593, 129 Pac. 1055.) In permitting the witness to testify from the transcript without showing that he had no independent recollection of the testimony, the court was technically in error, under the rule declared in *Marron* v. *Great Northern Ry. Co., supra.* Under the circumstances of this case, however, we do not think the error prejudicial. The case was tried without a jury. The other evidence submitted to establish the plaintiff's claim was amply sufficient to sustain the court's finding. Another trial could not accomplish any result other than to enable the court to require compliance with the statute (sec. 8020, *supra*) as to the technical method to be observed in order to render the evidence available to the plaintiff. We do not think a new trial should be ordered to accomplish this purpose.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.