DUFFY ET AL., RESPONDENTS, *v.* HASTINGS ET AL., DEFENDANTS; PHILIPSBURG STATE BANK, APPELLANT.

(No. 5,988.)

(Submitted November 17, 1926. Decided December 22, 1926.)

[252 Pac. 316.]

*Mortgages — Foreclosure — Banks — Dealings of Officer With Own Bank—Good Faith Required—Evidence—Sufficiency— Pleadings—Amendments During Trial—Discretion.*

Pleadings—Amendments at Commencement of Trial—Discretion.
1. In the absence of a showing of abuse of discretion on the part of the district court in permitting plaintiff to amend his complaint and reply by interlineation at the commencement of trial, its action will not be held error on appeal.

---

1.  See 21 R. C. L. 573.

[78 Mont. 22.]

**Banks and Banking—Mortgages—Foreclosure—Officers Dealing With Bank—Fraud—Good Faith—Evidence—Sufficiency.**

2. In an action to foreclose a mortgage on lands executed to a bank and at once assigned to plaintiffs, one of whom was a stockholder and president thereof, which bank several years thereafter became insolvent, and a creditor of which filed an answer in its behalf, the receiver having refused to make defense, alleging conspiracy between plaintiffs and officers of the bank to defraud it of security held by it, findings that the bank never loaned any money on the property, but that the notes and mortgage securing them were executed to the bank as a matter of accommodation to plaintiffs as its customers, and that there was no fraud in the transaction, *held* supported by the evidence.

**Same—Officers of the Bank may Deal With It, Provided Dealings are Fair.**

3. While an officer or director of a bank stands in a fiduciary relation to it and will not be permitted to profit because of his position as such, he may engage in ordinary business transactions with or through it, provided his dealings are fair and he takes no undue advantage of his fiduciary relationship.

**Same—Mortgages on Land—Inadequacy of Value to Secure Debt—Not Sufficient to Show Fraud.**

3a. Proof of inadequacy of value of land as security for indebtedness against it is not alone sufficient to prove fraud, either actual or constructive.

**Same—Dealings of Officer With Own Bank—Courts will Scrutinize—When not to be Upheld.**

4. Where an officer of a corporation (bank) has dealings with it, courts will subject them to a careful scrutiny to ascertain whether it may have been in any manner imposed upon by him, and though the transaction under review may not be voidable because of the adverse interest of the officer, it will not be sustained unless its fairness and the good faith of the officer are clearly evident.

---

[1]   Appeal and Error, 4 C. J., sec. 2757, p. 799, n. 34; p. 800, n. 40; Pleading, 31 Cyc., p. 399, n. 83.

[2]   Banks and Banking, 7 C. J., sec. 175, p. 568, n. 3 New.

[3]   Banks and Banking, 7 C. J. sec. 175, p. 568, n. 2, 3 New. Corporations, 14a C. J., sec. 1866, p. 97, n. 56; p. 99, n. 72; sec. 1887, p. 118, n. 31; p. 119, n. 34; sec. 1891, p. 122, n. 79. Trusts, 39 Cyc., p. 193, n. 8.

[4]   Banks and Banking, 7 C J., sec. 175, p. 568, n. 3 New. Corporations, 14a C. J., sec. 1866, p. 100, n. 75; sec. 1887, p. 119, n. 35, 36.

*Appeal from District Court, Granite County; George B. Winston, Judge.*

ACTION by John W. Duffy and another against Malon L. Hastings and others. Judgment for plaintiffs and defendant Philipsburg State Bank appeals. Affirmed.

---

3.   See 3 R. C. L. 465.
4.   See 7 R. C. L. 482.

*Mr. Timothy Nolan* and *Mr. Harlow Pease,* for ·Appellant, submitted a brief; *Mr. Pease* argued the cause orally.

This case involves the most vital principles of equity applied to the most delicate form of obligation—that of a fiduciary. The decisions of this court applying and enforcing the provisions of sections 7888 and 7889, Revised Codes, with relation to trusts and trustees, are so numerous that we content ourselves with the citation of those which deal with corporate fiduciaries. (*Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1; *McConnell* v. *Combination Min. & Mill. Co.,* 31 Mont. 563, 79 Pac. 248; *Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497; *Barker* v. *Montana Gold etc. and T. Min. Co.,* 35 Mont. 351, 89 Pac. 66; *Kleinschmidt* v. *American Min. Co.,* 49 Mont. 7, 139 Pac. 785; *Hanson Sheep Co.* v. *Bank,* 53 Mont. 324, 163 Pac. 1151; *First State Bank* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597; *In re Allard,* 49 Mont. 219, 141 Pac. 661; *In re Rodgers' Estate,* 68 Mont. 46, 217 Pac. 678; *Gordon Campbell P. Co.* v. *Gordon Campbell-Kevin Syndicate,* 75 Mont. 261, 242 Pac. 540.) Again and again this court has emphasized the rule that the burden is on the director to show that his dealing was honest and fair, that there was no profit to him or detriment to his corporation. And this rule is not limited to the technical purchase and sale of property; it extends, regardless of "technical subtlety" and "empty distinctions," to all transactions arising out of the business of the corporation—in the language of the Code, itself, to "any transaction concerning the trust."

The law applicable to the whole of the $15,000 security and operating to make it the bank's property notwithstanding the assignments is clearly written in the Revised Code and decisions: "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Sec. 10605; *Finlen* v.

*Heinze,* 32 Mont. 354, 80 Pac. 918; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966; *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842.) The most felicitous instance in our decisions in relation to the present case is the case of *First State Bank* v. *Lang,* above, recognized as a leading case in 9 A. L. R. 1159. The rule of estoppel against a bank president, while not labeled "estoppel," is there announced by Mr. Justice Hollo-way. The estoppel arises in the present case in an identical manner it did there.

*Mr. D. M. Durfee* and *Messrs. Murphy & Whitlock,* for Re-spondent, submitted a brief; *Mr. M. N. Whitlock* argued the cause orally.

Under the evidence the bank had no beneficial interest in the assignment, and there was no reason whatsoever why the matter should ever have been presented to the board of directors. The president or cashier of the bank were certainly authorized to assign the negotiable paper belonging to the bank itself as an incident to their general authority (7 C. J. 552; *United States Nat. Bank* v. *First Nat. Bank,* 79 Fed. 296, 24 C. C. A. 597, affirmed in *Auten* v. *First Nat. Bank,* 174 U. S. 125, 43 L. Ed. 920, 19 Sup. Ct. Rep. 628 [see, also, Rose's U. S. Notes]; *Fleckner* v. *Bank of United States,* 8 Wheat. (U. S.) 338, 5 L. Ed. 631 [see, also, Rose's U. S. Notes]), and the assignments so executed are *prima facie* valid. In this case, however, the question of the authority of the respective officers of the bank is not important, for the reason that the notes and mortgage involved did not in fact belong to the bank, and in assigning them the officers were not disposing of any of the assets of the bank. They were doing nothing more than to turn over to the true owners property left with the bank for that purpose in the same way that they would deliver any chattel to the true owner thereof. To do this, of course, no authorization from the stockholders or the board of directors or anyone else is necessary.

We have examined the well-known cases cited by the appellant in its brief beginning with the case of *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810, and while we heartily agree with the principles of law announced in those decisions, we respectfully submit that the principles so announced have no application whatsoever to a state of facts such as is here involved.

Simply because a man is a director of a bank does not preclude him from in good faith being interested in transactions even with the bank itself, as pointed out by our court in the case of *O'Rourke* v. *Opera House Co.,* 47 Mont. 459, 133 Pac. 965. An officer may even lend money to his corporation and take security therefor and enforce the same. The same is held in *Tatem* v. *Eglanol Mining Co.,* 42 Mont. 475, 113 Pac. 295. These cases follow a leading decision of the supreme court of the United States. (*Sanford Fork & Tool Co.* v. *Howe & Co.,* 157 U. S. 312, 39 L. Ed. 713, 15 Sup. Ct. Rep. 621 [see, also, Rose's U. S. Notes]; see, also, *Minnesota Loan & Trust Co.* v. *Peteler Car Co.,* 132 Minn. 277, 156 N. W. 255; 4 Fletcher, Cyclopedia Corporations, p. 3521; *La Garde* v. *Anniston Lime & Stone Co.,* 126 Ala. 496, 28 South. 199.) But here it is not claimed that these plaintiffs in any way dealt with any of the property of the corporation. Appellants' whole argument is based upon the assumption that these notes and the mortgage securing them were the property of the bank. If that assumption falls their entire case falls. There are certainly no other facts here from which could be worked out a constructive trust in favor of the bank as against these plaintiffs. (*McGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436; *Word* v. *Moore,* 66 Mont. 550, 214 Pac. 79.)

The question of estoppel is not involved in this case. The well-established rule is that estoppel to be relied upon must be pleaded except where there is no opportunity to plead it. (*Colwell* v. *Grandin Investment Co.,* 64 Mont. 518, 210 Pac. 765; *Scott* v. *Prescott,* 69 Mont. 540, 223 Pac. 490.) There

is no plea of estoppel in this case and there was nothing to prevent the appellant from pleading if it desired to rely upon it. But if the appellant had pleaded estoppel it would be in no better situation, for the simple reason that there are no facts showing it.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiffs to foreclose a real estate mortgage executed by the defendants Malon L. Hastings and his wife, Myrtle L. Hastings, and A. W. Hover and his wife, Lucille Hover, given as security for the payment of the sum of $15,000. The defendant bank filed an answer, and upon issue being joined by a reply thereto the cause was tried to the court without a jury. The court made its findings of fact and conclusions of law in favor of the plaintiffs upon which its judgment was entered decreeing a foreclosure of the mortgage. The appeal is by the defendant bank from the judgment.

The appellant complains only of that part of the judgment [1] which subordinates its rights to those of the plaintiffs. Vigorous objection is made by the appellant to the court's action in permitting the plaintiffs to amend their complaint and replication by interlineation at the commencement of the trial; however, as there is nothing in the record to indicate that the court abused its discretion, we will pay no heed thereto and will consider the case only on the issues as finally framed and the testimony in support thereof.

The complaint, in addition to the usual allegations as to the execution of the notes and the mortgage security, alleges that certain of the notes to the aggregate amount of $12,500 were assigned to the plaintiff Duffy on August 1, 1919, and that the remainder thereof, amounting to $2,500, were assigned to the plaintiff Hannah on July 22, 1920; it being further alleged that by an agreement between the plaintiffs their respective ownerships in the notes and mortgage are represented by the

amount of the principal indebtedness respectively assigned to each of them, and that the entire consideration for the notes was actually advanced by the plaintiffs in the amounts shown by the assignments, *viz.*, $12,500 by Duffy and $2,500 by Hannah. It is averred that after the execution of the notes and mortgage the mortgagors sold and transferred the mortgaged land to the Beverly Hill Stock Farm, and that the other defendants named assert or claim some right to or interest in the mortgaged property.

The answer admits the execution and delivery of the notes and mortgage, and by way of affirmative defense it is alleged that at the time of these transactions the plaintiff Hannah was a controlling stockholder and an officer of the defendant bank, namely, a director and its president; that one E. E. Springer was a majority stockholder and also a director and vice-president of the bank; that one A. L. Powers was a director and cashier of the institution; that at and prior to the time of the execution of the notes and mortgage the defendants Hover and Hastings were heavily indebted to the bank which held inadequate security therefor, and that the notes and mortgage in suit were in fact executed to secure such indebtedness; that on or about August 1, 1919, the plaintiffs, together with Springer and Powers, "conspired and confederated together" to deprive the bank of its security, "and by means of concealment and fraudulent practices, to divert to the plaintiffs herein the said security and deprive the said bank and its stockholders and creditors of the value of said mortgage"; that there was no consideration for the transfer of the notes and mortgage to the plaintiffs; that the assignments of the notes and mortgage by the bank to the plaintiffs were never recorded, and their existence was concealed by the plaintiffs and by Springer and Powers from the knowledge of other directors and stockholders of the bank; and that the plaintiffs up to the time the bank discontinued business, January 19, 1924, represented that the bank held a first mortgage to secure its loans to Hastings and

Hover. It is further alleged that the plaintiffs procured the conveyance of the mortgaged property to the Beverly Hill Stock Farm, a corporation owned and controlled by Hannah, and on the strength of representations that the bank held such security for the indebtedness of Hastings and Hover, loans were made to such corporation; "that each and all of said acts done by the said Hannah, Springer, and Powers had the effect of depriving the said bank of its security upon said loan; and that said loan as an asset of said bank became and was thereafter and still is worthless and of no value, and thereby said bank, its stockholders, depositors, and other creditors were and are defrauded of the sum of $15,000, and each and all of said acts were done and committed in violation of the trust had and enjoyed by said Hannah, Springer, and Powers as directors and officers of said bank, and the said plaintiff John W. Duffy aided, advised, and approved each and all of the said acts." The prayer is that the notes and mortgage be adjudged the property of the bank and for foreclosure of the mortgage against all the parties to the action by decree in favor of the bank. The reply denies all allegations of fraud, conspiracy and concealment, and alleges that the notes and mortgage were originally made out to the bank wholly as a matter of convenience, and that the bank held bare legal title thereto simply for accommodation, not having paid any consideration therefor, and having no beneficial interest therein. It is then alleged that the mortgaged land had been previously owned by the plaintiff Duffy and was sold by him to the defendants Hover and Hastings, and that on the date of the notes there was a balance due on the purchase price of such land amounting to the sum of $9,000; that Hover and Hastings were in need of funds with which to make some improvements on the property and solicited and procured from Duffy a further loan, thus increasing their indebtedness to him to the amount of $12,500, and that they obtained an additional sum

of $2,500 from Hannah, making the aggregate amount $15,000, secured by such real estate mortgage.

The court found all of the issues in favor of the plaintiffs. [2] It was concluded by it from the evidence particularly that the entire sum of $15,000 was advanced by the plaintiffs rather than the bank; that the notes and mortgage were executed to the bank merely as a matter of accommodation to the plaintiffs as customers of the bank; that they were never the property of the bank nor executed to secure any indebtedness due it; that there was no fraud, concealment or conspiracy, nor diversion of securities belonging to the bank; and that there were no representations made at any time to the directors, officers or stockholders of the bank that the bank owned or held a first mortgage on the property; and that the bank never advanced any part of the principal sum, nor had any right, title, interest or equity in or to the notes or the mortgage security. From a careful review of the record, we are of opinion that the findings are amply justified by the evidence. There is no conflict in the evidence, and no useful purpose will be accomplished by a detailed review thereof. However, it is noteworthy that the mortgage sought to be foreclosed was, on August 1, 1919, the day it was executed, immediately assigned to the plaintiff John W. Duffy, together with notes aggregating $12,500, for which it was given in part as security, and that the assignments so made were kept by the plaintiff Duffy and never placed of record, and that a second assignment of the entire principal indebtedness and the mortgage security was made and executed by the bank to Duffy and Hannah on July 22, 1920. The first of such assignments, *i. e.*, the one to Duffy alone, was executed by Hannah for the bank as its president, and the second, namely, the one from the bank to Duffy and Hannah, executed July 22, 1920, was executed for the bank by E. E. Springer, its vice-president, and A. L. Powers, its cashier. By an agreement executed on the same date as the last-mentioned assignment, the respective rights of Duffy and Hannah

in such mortgage indebtedness, as above stated, are set forth in writing. Neither this second assignment nor the written declaration as to the respective rights of Duffy and Hannah in the mortgage debt was ever recorded. In the second mortgage executed and delivered to the bank on the same day as the one first mentioned, August 1, 1919, by Hastings and Hover as security for an indebtedness of $2,700, it is recited: ''Said mortgagors hereby covenant with the said mortgagees that they are lawfully seized and in possession of said premises, and that the same is free from all encumbrance, excepting a certain mortgage of even date herewith made and executed by the parties of the first part (Hastings and Hover) to the parties of the second part (Philipsburg State Bank) in the sum of $15,000, to which this mortgage is second and junior.'' Although executed at the same time as the mortgage in suit, it was not recorded until five months later, *viz.*, on January 15, 1920. Two additional subsequent mortgages on the same property were executed to the bank, one by Hastings and Hover, dated June 7, 1920, for $25,000, recorded July 8, 1920, and the other from Beverly Hill Stock Farm, a corporation, to the bank for the sum of $10,000, dated November 21, 1921, and recorded December 1, 1921, each bearing like recital as to their being inferior and subject to the mortgage sought to be foreclosed. Thus the bank, its creditors and stockholders were given record notice by reason of the recitals contained in the second, third and fourth mortgages, that the mortgage in suit constituted a prior lien on the property. And in the bank's subsequent dealings with the property, accepting it as security for additional indebtedness, as it did, the bank must be held to have had knowledge of the existence of the first mortgage and that others were to benefit thereby. The subsequent mortgages were all executed with express recognition of the superiority of the first mortgage lien, whosoever might be the beneficiary.

There are many assignments of error; however, the determinative question is: Did the court err in refusing to find as a

fact that the making of the mortgage in suit to the bank and the contemporary assignment thereof to the plaintiffs constituted a fraud upon the bank?

After a careful examination of the record we are satisfied [3] that the court's findings are correct and should not be disturbed. We recognize the settled rule of equity that officers and directors of a corporation stand in a fiduciary relation to the corporation and its stockholders and will not be permitted to profit because of their position (*Coombs* v. *Barker,* 31 Mont. 526, 79 Pac 1); but this rule is inapplicable to the facts of the case now considered. Here there is nothing in the record to indicate that the bank ever at any time held any security for the indebtedness of Hastings and Hover prior to the second mortgage given to it on August 1, 1919, as security for the sum of $2,700, and in that transaction the existence of the mortgage in suit was openly given recognition, and the books of the bank disclose that it had no interest whatsoever in it, although it stood of record in its name. It cannot be concluded from such facts alone that the plaintiff Hannah profited to the bank's disadvantage because of his fiduciary relation.

There was no evidence of fraud or conspiracy introduced other than such as might be deducible from the relationship of the parties and their dealings, which amounted to nothing more than surmise or conjecture, and no testimony was introduced showing or tending to show that the plaintiffs had not in fact advanced the money secured by the mortgage in its entirety, or that the bank ever held any beneficial interest in the indebtedness or the mortgage security.

From the evidence it clearly appears that neither the mortgage nor the notes were ever carried on the books of the bank or thereby shown to have ever constituted any part or portion of the bank's assets. They were all executed to the bank and assigned to the plaintiffs when the bank was solvent. The notes and mortgage and the first assignment were executed four

years and five months before the bank was closed because of its insolvency, and the third and fourth mortgages were executed within a period of *two* years and four months after the execution of the mortgage involved, and two years and nineteen days before the bank closed because of its insolvency. The second assignment of the notes and mortgage was executed on July 22, 1920, *a month less than a year* after the first assignment, and three days less than three years and six months before the bank failed. It was executed with all of the earmarks of a perfectly legitimate bank transaction by E. E. Springer, its vice-president, and A. L. Powers, its cashier; and at that time Hannah was no longer the president of the bank, having resigned twenty-one days previously; and it does not appear that any officer, director, stockholder, or other person ever made complaint regarding the mortgage in suit until this action was instituted. The answer herein was filed by S. E. Cutler, a creditor of the bank, on behalf of the bank, the receiver having refused to make defense to the action, and so far as shown this was the first objection made to the transaction by anyone.

There was testimony that the value of the mortgaged lands at the time of the trial was not in excess of $15,000, but proof alone [3a] of the fluctuation in value of the mortgaged land, or its inadequacy as security for the indebtedness against it, falls far short of establishing fraud either actual (sec. 7480, Rev. Codes 1921), or constructive (*Id.*, sec. 7481). And simply because one is an officer or a director of a bank, or both, he is not thereby precluded, when acting in good faith, from engaging in ordinary business transactions with or through the bank, nor is he denied the right to fairly deal as a party with the bank. All that is required of him is that his dealings shall be fair and that he must take no undue advantage of his fiduciary relationship. (*O'Rourke* v. *Grand Opera House Co.*, 47 Mont. 459, 133 Pac. 965; *Tatem* v. *Eglanol Min. Co.*, 42 Mont. 475, 113 Pac. 295.)

There is no evidence upon which to predicate an involuntary or constructive trust (sec. 7887, Rev. Codes 1921), in favor of the bank as against the plaintiffs. Duffy was under no obligation to the bank whatsoever, and Hannah's duty as its president required that he should take no unfair advantage of it to his benefit. (*Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810.) His dealings with the bank, his *cestui que trust,* [4] were properly subjected to careful scrutiny by the court to ascertain whether it may have been in any manner imposed on by him. The rule is that even though the contract be not voidable because of the adverse interests of the officer of a corporation when attacked, it will not be sustained unless the fairness of the contract and the good faith of the officer are clearly evident. (4 Fletcher, Cyc., Corporations, p. 3582.) Like agents in general a corporate officer is required to be loyal to his trust.

In the light of these requirements, the transactions under consideration meet the test, and the court's findings will not be disturbed. We find no evidence to support appellant's contention that the bank was dealt with unfairly by its president, Hannah, or that he took advantage of his office to the detriment of the bank. Neither the bank nor the plaintiffs made any profit on the transaction. Clearly the plaintiffs loaned the $15,000 to Hastings and Hover in its entirety, and the evidence is that the mortgaged lands are not worth the amount of this indebtedness alone, regardless of the other loans made by the bank upon them. Thus, while it is apparent that the officers of the bank exercised poor business judgment in making the third and fourth mortgage loans. yet this alone does not operate to discredit or invalidate the former transactions. Of course, if Hannah conspired with others to deprive the bank of some of its securities or assets or diverted them to his own benefit and against the interest of the bank, an involuntary trust would arise in consequence. But there is no proof that

he did any such thing, nor does the proof warrant conclusion that he gave himself an unjust preference.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK and MATTHEWS concur.

Rehearing denied January 11, 1927.