AINSWORTH, RECEIVER, APPELLANT, *v.* KRUGER, RE-
SPONDENT.

(No. 6,172.)

(Submitted October 19, 1927. Decided November 9, 1927.)

[260 Pac. 1055.]

*Banks and Banking—Depositary Bonds—Pledging Securities of
Bank—Power of Bank—Estoppel.*

Banks and Banking—Power of State Bank to Pledge Securities to
Indemnify Surety on Depositary Bond.
1. In the absence of a statute prohibiting it, a state bank may
pledge its securities to indemnify a surety who signs a bond in
its behalf in order that the bank may obtain deposits of public
funds.

Same—Bank Director may Become Surety on Depositary Bond.
2. A bank director who became surety on a bond given by the
bank to secure deposits of public funds was not, by virtue of
his office, disqualified from accepting notes and mortgages from
the bank to indemnify him for possible loss because of his en-
gagement as surety, where the bank was believed to be solvent
at the time and the transaction was in entire good faith.

Same—Pledges—Possession in Pledgee—When Pledgor Deemed Trus-
tee of Pledged Securities for Pledgee.
3. While under section 8294, Revised Codes 1921, the lien of a
pledge is dependent on possession in the pledgee, he may entrust
the article pledged to the pledgor for a special purpose, in which
event the latter holds it as trustee for the pledgee; therefore
where the pledgee of securities of a bank delivered to him by it
while a going concern turned them over to its receiver for the
purpose of indorsing collections thereon, which were placed to
the receiver's credit as trustee for the owner, the claim that the
pledgee lost his right to the pledged property is without merit.

Same—Pledging Securities to Director as Surety on Depositary Bond
—Time for Which Pledge Binding.
4. Where the directors of a state bank on the second last day
of 1922, in passing a resolution under which certain of its secur-
ities were pledged to one of their number to indemnify the lat-
ter for possible loss on a depositary bond, had in contemplation
the execution of a like bond for the subsequent year and the
director in question in 1923 signed a new bond, and loss occurred
to him under the latter bond, he was entitled to hold the secur-
ities delivered to him under the first bond to indemnify himself
for such loss.

Same—Ultra Vires Acts—Estoppel.
5. A receiver of a state bank which, during the time it was a
going concern, secured benefits from deposits of public moneys
made as a consequence of the execution of a depositary bond by

[80 Mont. 468.]

one of its directors in consideration of a pledge to him of certain of its securities, is estopped from pleading that the transaction was in effect *ultra vires.*

[1]　Banks and Banking, 7 C. J., sec. 232, p. 592, n. 70.
[2]　Banks and Banking, 7 C. J., sec. 147, p. 541, n. 54.
[3]　Appeal and Error, 3 C. J., sec. 623, p. 727, n. 99. Pledges, 31 Cyc., p. 818, n. 48, p. 819, n. 54.
[4]　Pledges, 31 Cyc., p. 821, n. 76.
[5]　Banks and Banking, 7 C. J., sec. 240, p. 596, n. 17. Equity, 21 C. J., sec. 151, p. 172, n. 13.

*Appeal from District Court, Sanders County; Theodore Lentz, Judge.*

ACTION by A. S. Ainsworth, as receiver of the Farmers & Merchants' State Bank of Plains, Montana, against John R. Kruger. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Mr. A. S. Ainsworth,* for Appellant, submitted a brief.

*Messrs. Murphy & Whitlock* and *Mr. L. L. Bulen,* for Respondent, submitted a brief; *Mr. A. N. Whitlock,* argued the cause orally.

Appellant contends that the only authority under which a state bank could, at the time here material, pledge its securities to guarantee deposits is Charter 89 of the Laws of 1923, which requires the county treasurer to take security of a certain kind, namely, surety bonds, personal bonds or government or state bonds or county warrants or other securities supported by general public taxation. From this counsel argues that a bank has no right to pledge for such purpose any other or different kind of security. Counsel overlooks the fact that the purpose of Chapter 89, Laws of 1923, and the existing law which it amended, was not to give authority to state banks to furnish security for county deposits but to protect county funds, and to that end the security required is the very best possible security that a bank would be likely to hold, namely, government, state or county bonds or warrants. There is nothing in the depositary law indicating an absence of power, so far

as the bank is concerned, to give such other security for such deposits as it desired. In fact, the implication from the law is that such power existed, but the purpose of the law was to designate the kind of security that would be acceptable to the public authorities.

The only authorities cited which in any way supports the contention that a state bank has no power to pledge its assets to secure deposits is the case of *Commercial Bank & Trust Co.* v. *Citizens Trust & Guaranty Co.*, 153 Ky. 566, 156 S. W. 160. In this case the supreme court of Kentucky holds in favor of appellant's contention, but bases its decision upon the peculiar statutory provisions in Kentucky which limit the powers of state banks and specifically designates their powers, and excludes from such designations the power to pledge their securities to secure deposits. In Montana we have no such statute and the general powers given to corporations generally, and to banks as well, in the light of the recent decisions of the courts upon the subject indicates clearly that there is an implied power on the part of a bank to pledge its assets to secure deposits if it so desires. In addition to that we have the positive requirement that deposits of public funds must be secured either by surety bonds or by deposit of securities of the highest class.

It is admittedly the law that banks may borrow money for corporate purposes, and the right to borrow carries with it the right to secure the indebtedness by mortgage or otherwise. (7 C. J. 592; 3 R. C. L. 427.) The privilege of banks to borrow money and pledge their assets as security for the payment thereof is so well established and recognized throughout the nation that it would hardly seem necessary to cite further authority for such a broad proposition. In view of the holding in this state that the relationship between a bank and its depositors is that of debtor and creditor (*Stankey* v. *Bank*, 64 Mont. 309, 209 Pac. 1054; *Murphy* v. *Nett*, 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713), it would seem that the bank, in the absence of express statu-

tory prohibition, and there is none in Montana, could pledge its assets to secure deposits. We cite: *Richards* v. *Bank,* 79 Iowa, 707, 45 N. W. 294; *McPherson* v. *National Surety Co.,* 72 Colo. 482, 212 Pac. 489; *Cameron* v. *Christy,* 286 Pa. 405, 133 Atl. 551; *Paige Trust Co.* v. *Rose,* 192 N. C. 673, 135 S. E. 795.

We entirely agree with the general statement of law announced by the appellant as to the position of trust and confidence occupied by the directors of a corporation, and particularly a banking corporation, but these rules only require that his dealings be in good faith and not for personal profit or advantage, and they do not in any sense prohibit transactions between a bank and its directors merely because of the relationship existing. The situation in that regard is not different from an ordinary corporation. (Fletcher on Corporations, p. 2326; *Rawlings* v. *New Memphis Gas-Light Co.,* 105 Tenn. 268, 80 Am. St. Rep. 880, 60 S. W. 206; *Minn. Loan & Tr. Co.* v. *Car Co.,* 132 Minn. 277, 156 N. W. 255; *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.,* 157 U. S. 312, 39 L. Ed. 713, 15 Sup. Ct. Rep. 621 [see, also, Rose's U. S. Notes]; *O'Rourke* v. *Opera House Co.,* 47 Mont. 459, 133 Pac. 965; *Duffy* v. *Hastings,* 78 Mont. 22, 252 Pac. 316; *Pierce* v. *National Bank of Commerce,* 13 Fed. (2d) 40.)

A voluntary redelivery by the pledgee to the pledgor for a special purpose will not defeat the right of the pledgee, when that purpose has been fulfilled, to recover the pledged property. (*Schumann* v. *Bank of California Nat. Assn.,* 114 Or. 336, 37 A. L. R. 1531, 233 Pac. 860; *In re Reeve,* 111 Iowa, 260, 82 N. W. 912; *Clark* v. *Iselin,* 88 U. S. 568, 22 L. Ed. 568.) An exhaustive note will be found in 39 L. R. A. (n. s.) 886, and at pages 890 and 891 it is expressly pointed out that delivery for collection or for exchange, or for any other special purpose, does not affect the right of the pledgee. A common case is where notes are delivered

to a pledgor bank for the purpose of safekeeping and collection.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In the year 1922 and thereafter until January 25, 1924, the Farmers and Merchants' State Bank of Plains, a Montana corporation, hereafter referred to as the bank, was engaged in banking. It was capitalized for $20,000. Messrs. Robison, Bulen, Larse and Kruger were the directors; Robison was president and Larse cashier.

During the year 1922, the bank, in order to obtain its share of the funds of Sanders county for deposit, was required to furnish the county a depositary bond to the amount of $50,000. This the bank gave, Robison becoming surety for $20,000, Kruger for $20,000 and Larse for $10,000.

A meeting of the board of directors was held on December 29, 1922, all present. Kruger advised his associates that he had been visiting relatives in the "Blackfoot country," one of whom had signed a bond for the bank of Ovando, which closed, with result that he was "cleaned out." Kruger told the other directors that he "was done being a bondsman; that was all there was to it," as a witness testified.

It was supposed that the county treasurer who would soon take office would require a new bond. The directors discussed the matter, cited the fact that it would cost a considerable sum to pay the premium on a surety bond, and finally proposed to protect Kruger by giving him collateral consisting of "slow real estate paper"—notes, secured by mortgages upon real estate, the signers whereof were considered good but slow in paying their debts. To this Kruger assented, and a resolution was adopted unanimously, Kruger not voting, authorizing the transfer and delivery of certain notes secured by mortgages, specifically named, to Kruger, as collateral security to protect him from liability by reason of his suretyship upon the depositary bonds of the bank then

in existence, or thereafter to be executed, as the court found, and, we think, correctly. The notes mentioned in the resolution, with the exception of the Miller note, were indorsed, and all were delivered to Kruger. At the same time the bank executed to him a written assignment of all the notes and mortgages. Kruger, referred to hereafter as the defendant, thereafter held, and still holds, these notes and mortgages, except in instances where substitutions have been made, and except as stated hereafter.

On May 8, 1923, defendant signed a new depositary bond which was in contemplation when the resolution was adopted.

The notes assigned to the defendant aggregated $18,000 in round numbers.

All the foregoing acts were reported to the superintendent of banks who made no objection.

On January 12, 1924, at the annual meeting, a resolution was passed which in effect ratified the foregoing transactions between the defendant and the bank.

There is not any evidence tending to show that the bank was insolvent when the original resolution was passed and we think the record justifies the conclusion that when the resolution of January 12, 1924, was adopted none of the directors deemed it insolvent, and that its closing was not then within their contemplation. The evidence indicates that the reason for its closing upon January 25, 1924, was the result of a run caused by the failure of the American Bank & Trust Company at Missoula.

The bank having closed, Robison was appointed receiver, which position he held until he was succeeded by A. S. Ainsworth, the plaintiff. After the receiver was appointed Sanders county brought suit upon the depositary bond of May 8, 1923, and secured judgment against the defendant in the sum of $20,000, which judgment has become final.

Payment in full of the Louis Vacura note, held by the defendant, amounting to $4,331.25, was made to receiver Robison, who placed the amount received in his own name

under the designation "trustee for owner." The same action was taken respecting $100 received upon the Clark note. The receiver was obliged to obtain the Vacura note from the defendant in order that he might accept the payment tendered and deliver the note to the maker. He also obtained the Clark note in order to indorse payment thereon.

It was deemed advisable to commence action to foreclose what is known as the Miller mortgage and for that purpose the defendant, by agreement with receiver Robison, placed the Miller note and mortgage in the hands of Mr. Bulen, who is an attorney at law, for foreclosure. He brought action thereon, secured judgment, and caused the mortgaged property to be sold. For convenience, as the court found, the suit was prosecuted in the name of the receiver. At the sale, there being no other bidder, the receiver bid in the property in his own name and pursuant to this agreement with the defendant, made before the action was begun, assigned the certificate to the defendant.

The plaintiff brought this action to recover of the defendant the securities above mentioned and to prevent him from enforcing collection thereof and from receiving the collection already made thereon.

The court made findings of fact from which it concluded that all the notes and mortgages in question were delivered to the defendant in good faith, as collateral security, to secure him from liability upon the depositary bond, and that he is entitled to hold them, and to enforce and exhaust the same to the extent required to satisfy his liability; that he is entitled to have paid over to him all sums collected by the receiver upon the pledged notes, and likewise, is entitled to hold the real estate bid in on the Miller foreclosure; and that the plaintiff has no interest in any of the notes, mortgages or cash except in so far as there may be an overplus after the defendant's liability to Sanders county shall be satisfied; and entered judgment in favor of the defendant. The plaintiff caused to be settled a bill of exceptions, in

which is included all of the testimony taken at the trial, and appealed from the judgment.

1. At the outset counsel for plaintiff challenges the authority [1] of the board of directors of a state bank to pledge the assets of the bank to indemnify a surety upon a bond given by the bank to secure deposits of county money, and also the right of a director to accept the pledge.

Upon the first point it is suggested that the provisions of section 4767, Revised Codes 1921, and that section as amended by Chapter 89 of the 1923 Session Laws, page 237, have some application; but this is not so. This legislation relates to the duties of county commissioners and county treasurers, respecting the deposit of public funds and the security required for their protection, and can have no reference to the situation in the case at bar. Whether the bank could lawfully have pledged to the county treasurer assets other than those mentioned in the statute or whether the county commissioners could have approved the same as security for a deposit of county funds is not in this case.

The statute permitted the bank to give to the treasurer an indemnity bond and it did so. A bank, in the absence of a statute to the contrary, and in Montana we have none, · has a right to pledge its securities to indemnify a surety who signs a bond in its behalf in order that the bank may obtain a deposit of public funds. (*McFerson* v. *National Surety Co.,* 72 Colo. 482, 212 Pac. 489; *Page Trust Co.* v. *Rose,* 192 N. C. 673, 135 S. E. 795; and see *Cameron* v. *Christy,* 286 Pa. 405, 133 Atl. 551; *Richards* v. *Osceola Bank,* 79 Iowa, 707, 45 N. W. 294.)

In *Page Trust Co.* v. *Rose,* supra, the court said: "In the instant case the Bank of Hamlet, located and doing business in Richmond county, has express authority to protect funds of said county, deposited with it by the board of commissioners, by a bond, with either personal or corporate sureties. The bank has implied power, at least, to pay a reasonable premium to a corporation duly organized to become surety

on its bond. It must be held also that it has power, when required to do so, to protect personal sureties, by transfer or assignment, in good faith, of assets in value reasonably proportionate to the liability of such sureties, under the bond which is given to protect and thereby secure the deposits, such bond having been authorized and required by statute." *McFerson* v. *National Surety Co.,* supra, is directly in accord.

*Commercial Banking & Trust Co.* v. *Citizens' Trust & Guaranty Co.,* 153 Ky. 566, Ann. Cas. 1915C, 166, 45 L. R. A. (n. s.) 950, 156 S. W. 160, relied upon by plaintiff, stands alone. Even upon the point decided it seems opposed by all the authorities. The decision rests upon the court's construction of a Kentucky statute, which is different from our own. From the language employed by the justice writing the opinion it would seem that the court recognizes an exception where the law requires security before a deposit of public funds can be made. (*Cameron* v. *Christy,* supra.) However, the Kentucky case is not in point here. If our legislature desires to declare that pledging securities to indemnify a surety works a preference against depositors and is against public policy, the way is open to it. (See, incidentally, Session Laws 1927, Chap. 89, sec. 112.)

As to defendant's being a director when the resolution of [2] December 29, 1922, was passed: As we have seen, the lower court found, and the evidence sustains the finding, that the transaction was in entire good faith. In view of our own decisions relating to the powers and obligations of corporations and directors between themselves, this point would hardly seem to be debatable.

In *O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965, it was held that the officers of a corporation may loan money to it for legal purposes and hold and enforce their claims for repayment, provided they act in good faith and do not obtain an advantage to the detriment of the other stockholders. "An officer loaning ·money to

the corporation may even demand and receive security for his advancements. So long as he has acquired by the transaction no advantage which might not be accorded to any other creditor under the same circumstances, his claim will be upheld and enforced.''

In *Duffy* v. *Hastings,* 78 Mont. 22, 252 Pac. 316, we said that simply because one is an officer or director of a bank, or both, he is not thereby precluded, when acting in good faith, from engaging in ordinary business transactions with the bank, nor is he denied the right to deal fairly as a party with the bank. All that is required of the director is that his dealings shall be fair, and that he shall take no undue advantage of his fiduciary relationship. (See *Tatem* v. *Eglanol Min. Co.,* 42 Mont. 475, 113 Pac. 295; *Mayger* v. *St. Louis Min. & Milling Co.,* 68 Mont. 492, 219 Pac. 1102.) In the last case cited we said there is not any implication that one who deals with a corporation of which he is a director, deals in bad faith, in the absence of a showing that he has gained an advantage thereby.

In *Rawlings* v. *New Memphis Gas-light Co.,* 105 Tenn. 268, 80 Am. St. Rep. 880, 60 S. W. 206, the foregoing principles are recognized, after which the court says in effect: This being so, why should the director not be permitted to secure indemnity from possible loss because of accommodation indorsements he has made for it, the corporation being a going concern, continuing in and expecting to continue business? (And see *Minnesota Loan & Trust Co.* v. *Car Co.,* 132 Minn. 277, 156 N. W. 255; *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.,* 157 U. S. 312, 39 L. Ed. 713, 15 Sup. Ct. Rep. 621 [see, also, Rose's U. S. Notes].)

2. It is next insisted by counsel for plaintiff that the de-
[3]  fendant lost his right to the securities he claims to have held in pledge by permitting the receiver to collect thereon and to retain the proceeds of the collections made, to bring suit as receiver upon a mortgage, bid in the property as receiver, and pay the costs of the foreclosure suit from the

funds of the receivership. The plaintiff relies upon section 8294, Revised Codes 1921, which provides that ''the lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee or to a pledge holder, as hereafter prescribed,'' and *Brunswick-Balke-Collender Co.* v. *Higgins,* 54 Mont. 11, 165 Pac. 1109, in which the elements of a contract of pledge are discussed. But pledged notes may be entrusted by the pledgee to the pledgor for a special purpose, in which case it will be held that the pledgor while so holding them does so as trustee for the pledgee (*National Park Bank* v. *American Brewing Co.,* 79 Mont. 542, 247 Pac. 436), and that principle applies in this case. The evidence shows that the receiver was obliged to obtain the notes from the defendant in order to indorse payments thereon when payment was made. It will be remembered that when the receiver obtained the money he did not place it with the general funds of the bank, but to his own credit as trustee for owner. There is not any doubt that an agreement was made between the receiver Robison and the defendant respecting the foreclosure of the Miller mortgage; it was to the effect that the receiver would foreclose the mortgage in his official capacity and if the property brought cash at sheriff's sale the cash would be turned over to defendant, but if the receiver had to buy in the property he would assign to the defendant the sheriff's certificate of sale. Whether the receiver was justified in using the funds of the bank in the payment of the costs of the foreclosure proceedings is a matter which we do not have to determine in this action; it is not within the purview of the pleadings.

3. Finally, the plaintiff insists that as the defendant did not **[4]** suffer any loss under the 1922, but did under the 1923, bond, he cannot retain the pledged securities under the resolution of December 29, 1922. The answer is that the court found in effect that that resolution contemplated the execution of the 1923 bond, which the subsequent actions of the

parties confirmed. This conclusion is fortified by the resolution of January 12, 1924, which was passed at a time when the parties did not anticipate the closing of the bank, nor contemplate its insolvency. The 1924 resolution was in effect a ratification of the acts of the parties with respect to the pledged securities and the substitutions which had been made in the interim. There is no doubt that the defendant, under the facts disclosed, was entitled to hold the securities which he received while the 1922 bond was in force to indemnify him from liability under the 1923 bond.

The bank secured the benefits derived from the deposits [5] which were made as a consequence of the execution of the 1923 bond and the receiver, acting for the corporation, cannot now escape the burdens of the transaction by setting up the plea that the transaction was in effect *ultra vires*. As is stated in *Cameron* v. *Christy,* supra: "To do so would be unconscionable and is therefore impossible in a court of equity. He who seeks equity must do equity. The cases are legion, and from many courts, in which this sound rule of equity and common honesty has been enforced."

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.